408

In re BARONESS, INC., Debtor.

Jason D. MONZACK, Trustee, Plaintiff,

v.

B.S. IMPORTING CO., INC., Defendant.

Bankruptcy No. 8500553.
Adv. No. 860033.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 8, 1986.

Jason D. Monzack, Halpert & Scoliard, Providence, R.I., Trustee.

Anthony Iannuccillo, Iannuccillo & Goldberg, Inc., Providence, R.I., for defendant.

## DECISION

ARTHUR N. VOTOLATO, JR., Bankruptcy Judge.

Heard on September 8, 1986 on the trustee's complaint, under 11 U.S.C. § 547(b), to set aside, as a preferential transfer, a payment of $2,457.54 made by Baroness, Inc. to B.S. Importing Co., Inc., within the preference period.

The parties stipulated to the following facts.[1] On April 16, 1985 B.S. Importing Co., Inc. (BSI) received an order from Baroness, Inc. (Baroness) for 37,000 feet of brass chain. Delivery of the chain was made to Baroness on May 20, 1985, and Baroness' check was received by BSI on July 29, 1985. An involuntary petition was filed against Baroness on August 30, 1985. See Joint Pre-trial Order at 1. The parties agree that the sole issue for determination is whether this transaction (in particular, the manner in which the debt was incurred by Baroness and the payment made to BSI) was in the ordinary course of business of both parties. See 11 U.S.C. § 547(c)(2).[2]

At trial, the only witness was Stephen J. Barasci, the sole officer and shareholder of BSI. Mr. Barasci testified that while BSI usually fills orders from inventory, the order from Baroness was a "special order," which BSI had to place with its foreign supplier. He stated that "special orders" are dealt with infrequently,[3] and that the method of billing "special orders" was dif-

---

1. This decision constitutes our findings of fact and conclusions of law. See Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

2. § 547. Preferences
   (c) The trustee may not avoid under this section a transfer—
   ....
   (2) to the extent that such transfer was—
   (A) in payment of a debt incurred by the debtor in the ordinary course of business ... of the debtor and the transferee;

(B) made in the ordinary course of business ... of the debtor and transferee; and
   (C) made according to ordinary business terms;

3. In response to a question by the Court, Mr. Barasci stated that during a season one or two special orders might be placed, but that six months might pass between seasons before another special order was placed.

ferent from his regular billing practice for orders which were filled from stock. BSI's usual billing practice, according to Barasci, is to require net payment within ten days of the end of the month of delivery, for orders filled from stock. *See* Plaintiff's Exhibit B. On special orders, BSI requires a deposit when the order is placed, and net payment within thirty days of delivery. In the instant transaction, Mr. Barasci conceded that the Baroness order was agreed to on conditions different even from BSI's "special order" terms, since no deposit was required, and the parties agreed that payment would be made within sixty days.[4]

For a payment by a debtor to a transferee to constitute a preferential transfer it must meet each of five elements spelled out in the Code, *see* 11 U.S.C. § 547(b),[5] and the trustee has the burden of proof as to the avoidability of a transfer under that section. *See* 11 U.S.C. § 547(g). In this proceeding the trustee has clearly established that the payment of $2,457.54 from Baroness to BSI on July 29, 1985 meets all of the requirements necessary to establish a preferential transfer under § 547(b).

On the other hand, the trustee may not avoid a transfer made in the ordinary course of business of both the transferee and the debtor, and which is made on ordinary business terms. *See* 11 U.S.C. § 547(c)(2). Pursuant to 11 U.S.C. § 547(g), the transferee has the burden of proving that such transfer was made in the ordinary course of business, and on ordinary business terms, if it is to elude the trustee's avoiding powers. After considering the testimony and documentary evidence of record, we conclude that BSI failed to show that the payment in question was made in the ordinary course of business. To the contrary, the facts presented *by BSI* actually support the trustee's position that Baroness' order and the terms of payment were outside of BSI's ordinary business practice, and even outside of its own procedure for filling a "special order." Defendant's counsel's persistence in showing how this transaction was a "special order," handled by BSI differently from its usual method of operation, leads inescapably to the conclusion that the payment in question does not constitute a transfer made in the ordinary course of business.

For the foregoing reasons, the trustee is entitled to recover, as a preferential transfer, the payment made to BSI by Baroness in the amount of $2,457.54, and B.S.I. has an allowed, unsecured claim against the estate in that amount.

Enter Judgment accordingly.

---

4. Payment was received by BSI on July 29, 1985, seventy days after the delivery on May 20, 1985.

5. § 547. Preferences

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—

(A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such a creditor at the time of such transfer was an insider;
 (5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.